G.P. Bullis, for himself and as agent and attorney in fact for his brother, C.G. Bullis, entered into a verbal agreement to sell to Cecil L. Bland 365.52 acres of land located in Catahoula Parish, Louisiana, and described as, all that part of Section 14 lying South of Bayou Louis excepting and not including the S 1/2 of SW 1/4 of said Section 14, in Township 9 North, Range 7 East. The sale was made subject to a sale of an undivided one-fourth interest in the minerals under the S 1/4 of SE 1/4 of said Section 14. The consideration was $475.
Sometime thereafter, when Bullis had secured certain documents necessary to clear the title, he executed a cash notarial deed to Bland, describing the land and mineral reservation as above set forth, and showing a consideration of $100 and other valuable considerations. He mailed this deed to Bland at Shreveport, Louisiana, and same was duly received. Bland, although he had not paid Bullis the agreed purchase price, did upon receipt of the deed sell the property to Sam Sklar, who immediately had his deed recorded. The deed to Sklar contained the identical mineral reservation as was in the deed from Bullis to Bland. Sklar, with Bland's consent, secured the services of an attorney to examine the deed to Bland and the attorney recommended that certain changes be made to conform to the agreement, and prepared a new deed from Bullis to Bland instructing Bland to secure the execution of the new deed. Acting on the advice of the attorney, Bland mailed to Bullis the new deed as well as the deed Bullis had executed to him and requested that Bullis execute the deed prepared by the attorney and return to him, and to destroy the deed formerly executed. The deed he wished executed showed the consideration to be $475, and changed the mineral reservation to read as follows: "This sale is made subject to a sale of an undivided one-fourth interest in the minerals under the S 1/2 of SE 1/4 of said Section 14."
Accompanying the deeds sent to Bullis was the following letter from Bland:
"Shreveport, La. Aug. 16, 1941
I have closed the deal with Mr. Sklar here for the land but owing to the words of the reservation in the deed that you made me, Mr. Abramson insisted that I get another deed from you and he said that he would prefer to have the actual consideration in it.
If the consideration is not satisfactory you can make it $500.00 if you want to but I think that this will make it satisfactory to the buyer and his lawyer.
I am returning the original deed so that you sign the new one and destroy the other.
You will find check for $475.00. I would have sent Cashier's check but it is past banking hours here." *Page 574 
When Bullis received the deed he had executed to Bland, which had not been recorded, instead of executing the new deed which accompanied it, he sold a lease for oil and gas covering the entire tract, and executed the lease. However, before it was recorded, Bland and Sklar placed of record a lis pendens. After executing the lease, Bullis changed the consideration in the new deed from $475 to $365 and added the following reservation: "* * * and subject also to an oil, gas and mineral lease of the whole of said land executed on August 20, 1941 in favor of D.G. Dunbar. It being especially recognized and agreed that said lease is a valid and existing lease on the whole of said land, altho not yet recorded. Said lease grants to said lessee all of the oil, gas and other minerals under said land subject to a royalty to lessor on any oil, gas or other minerals produced and vendor herein conveys to said C.L. Bland all royalties which may accrue under said lease and any rental payments made, to keep said lease in effect during its period of five years. Said lease being on form of oil, gas and mineral lease commonly known as Bath Form Louisiana Special 14-B."
He also tore the signatures from the original deed and returned Bland his check for $475, also sending him his personal check for $18, which Bullis claimed was Bland's commission. Bullis then attached to the deed, which he had changed and executed, a draft on Bland for $365 and sent it to a bank in Shreveport.
Bullis sent the following letter to Bland:
"I am sending you thru the bank today, the deed to Sec. 14, T. 9 R. 7, Catahoula Parish, La., just as you sent it to me for signature, except reserving the oil lease I have made as per telephone conversation with you.
"I made a reduction on account of the lease, cutting the price to $1.00 per acre, and making the consideration at that price instead of the $500. I don't think this should be necessary for the lease certainly adds to the value of the land. I am turning over to the buyer, at this price of $1.00 per acre, not only the land but also the rentals and royalties under the lease. This certainly gives them a very big bargain.
"I neglected to deduct your commission. I should have deducted that from my draft, but enclose herewith check for $18.28.
"I don't see how anyone can fail to be pleased with buying land like this, under an oil lease, at $1 per acre. If they don't want it at that price, I will take it back and let you keep the commission".
Bland refused to accept the deed and pay the draft, and wrote the following letter to Bullis:
"I am greatly disappointed in you as to the land deal. It has gotten me in a jam and the party I sold to, Mr. Sam Sklar, says he bought the property from me and I delivered him your deed along with one for me. They wanted a slight change in the wording of the deed. It did not change the price or terms otherwise. I cannot see how you felt that you were at liberty to lease the land while you held the deed and my check for the land. I was the buyer of the land and did not claim the commission as an agent. I had a perfect right to sell it at any price I could. I wired you at Chicago that I was getting $1000 for it.
"My hands are tied so I could not accept the deed as offered thru the bank here.
"I am returning the check you sent for $18.28. I cannot accept this commission.
"You have failed me in this matter. When I sent you the deed that you sent me, I had accepted it completely but the buyer from me thought that the change might save six months life on the reservation of royalty so he just told me to send you the deed to sign and return so we could record it. I never though that you would get me in this jam by taking advantage of the deed being in your possession, to deliver a lease on it and then propose to keep the lease money. The title to the land was mine just as completely as if I had recorded it.
"It has gotten us into a lawsuit that is very regrettible."
Bland and Sklar thereafter filed this suit against G.P. Bullis, a resident of Concordia Parish, Louisiana, and his brother, C.G. Bullis, a resident of California, who was represented by power of attorney by G.P. Bullis in the transaction. G.P. Bullis owned the surface of the land and C.G. Bullis was the owner of all the minerals thereunder. The land is located in Catahoula Parish and the suit was filed in Concordia Parish. C.G. Bullis was cited and served through a curator ad hoc. Plaintiff alleged the facts above set forth and prayed for a judgment for specific performance and, in the alternative, for damages in the sum of $525 for Bland, being the difference in the agreed price *Page 575 
of the land and $1000, the amount for which Bland sold the property to Sklar.
Defendant, C.G. Bullis, filed a plea to the jurisdiction, which plea was sustained by the lower court and correctly so. He is an absentee and the suit was not filed in the parish where the land is located. That necessarily eliminated from the suit any chance for plaintiff to recover the minerals which were owned in their entirety by C.G. Bullis.
The defense is based on the following grounds:
That Bland refused to accept the deed he executed to him and returned it; that Bland then made a different offer, as shown by the deed Bland requested him to execute; that he refused Bland's offer and made a counter-offer in the changed deed which Bland refused to accept and, therefore, there never was a contract. He relies on Articles 1798, 1805 and 1806 of the Revised Civil Code to sustain his position.
The lower court rendered the following written opinion in the case:
"Plaintiffs, Cecil L. Bland and Sam Sklar, are both residents of the Parish of Caddo, Louisiana. Defendant, Charles G. Bullis, is a resident of California and defendant, Gilbert P. Bullis, is a resident of the Parish of Concordia, Louisiana. They seek specific performance of the sale of realty situated in the Parish of Catahoula, Louisiana. Defendant, Charles G. Bullis, is before this Court only through service on Gilbert P. Bullis as curator ad hoc. A plea to the jurisdiction of this Court by this non-resident defendant was heretofore sustained and, as to him, this suit is ordered dismissed.
"Plaintiffs' demands are based upon the following proven grounds:
"On August 9, 1941, Gilbert P. Bullis, acting for himself and as the duly authorized agent for his brother, Charles G. Bullis, executed by notarial act a cash sale conveying unto Cecil L. Bland lands situated in Catahoula Parish, Louisiana, described in said deed as follows: `All that part of Section 14 lying South of Bayou Louis, excepting and not including the S 1/2 of SW 1/4 of Section 14, in Township 9 North, Range 8 East, containing 365.52 acres, more or less, excepting and not including an undivided one-fourth interest in the mineral rights on the S 1/2 of SE 1/4 of Section 14, heretofore sold by the vendor.'
"The consideration recited in this sale was `$100.00 cash paid and other good, valuable and sufficient considerations, the receipt of which is hereby acknowledged and full acquittance given for the whole of said price and consideration'.
"The deed evidencing this transaction was delivered by mail to the plaintiff, Cecil L. Bland, at Shreveport, La. Before having his deed recorded, Bland, in turn, resold the same land to plaintiff, Sam Sklar, of date August 16, 1941. The consideration for this transaction was the sum of $1000.00 cash. Sklar caused his deed to be filed and recorded in Catahoula Parish on August 18, 1941, and at the same time requested his vendor, Bland, to secure a correction deed from defendant Bullis, wherein the act of sale would recite the true consideration and also a slight change of wording of the mineral reservation therein. On August 16, 1941 Bland made this request as follows:
"`Mr. G.P. Bullis Ferriday, La. Dear Sir:
I have closed the deal with Mr. Sklar here for the land but owing to the words of the reservation in the deed that you made me, Mr. Abramson insisted that I get another deed from you and he said he would prefer to have the actual consideration in it.
If the consideration is not satisfactory you can make it $500 if you want to but I think this will make it satisfactory to the buyer and his lawyer.
I am returning the original deed so that you can sign the new one and destroy the other.
You will find check for $475.00. I would have sent Cashier's Check but it is past banking hours here now.
Sincerely yours, C.L. Bland.
Have you any more Catahoula or Concordia land for sale for this price or a little more if it is located right.
C.L. Bl.'
"On August 20, 1941, and after receipt of the above letter, defendant C.P. Bullis executed an oil, gas and mineral lease on the whole of the lands in question to one D.G. Dunbar. Three days later, August 23rd, defendant executed the correction deed requested, but inserted a reservation of the mineral lease made by him to Dunbar. *Page 576 
He further altered the correction deed by changing the consideration to the amount of $365.00, and at the same time destroyed the original deed between himself and Bland by deleting or tearing therefrom the signatures of himself and the notary. This latter deed is refused by plaintiffs who now demand performance of the original contract. In the alternative, plaintiff Bland demands damages in the sum of $525.00, the amount of the profit he would have realized on the resale made by him to Sklar.
"Defendant takes the position that when the plaintiffs requested the correction deed aforesaid, his original offer and deed were rejected, leaving him free of any liability in his original contract; that the changes requested were of such nature as to create a new offer and a rejection of his original.
"After a careful study, this Court is of the opinion that the changes requested by the correction deed were not such as to alter or change the material conditions and obligations of the original contract, but only to clarify and express more accurately the real conditions. But even so, it is the opinion of the Court that plaintiff Bland had fully and completely accepted the original act of sale before requesting the correction deed. He had not only accepted it but had resold the same lands under his warranty deed, and had so advised defendant. Had defendant not desired to execute a correction deed as requested, he could have refused the request and returned plaintiff his property. He had no right or privilege to destroy the original deed, the property of plaintiff, without first executing another, as requested. As between themselves, and at the time of the request for a correction deed, the land in question was the property of the plaintiff, Bland. Defendant G.P. Bullis, having destroyed the notarial document evidencing this ownership, the plaintiff is without power of notice to third persons. To protect their rights in the premises, plaintiffs filed timely notice lis pendens prior to defendants' oil lease to Dunbar. Under these facts and conclusions, plaintiffs should be entitled to their demands for specific performance, but defendants are co-owners of the lands in question, in that, Gilbert P. Bullis is the owner in fee and Charles G. Bullis is the owner of the mineral rights thereunder. The Court not having jurisdiction of either the property or person of the last named defendant, it is therefore without power to order him to perform.
"Addressing itself to the alternative demands of the plaintiff, Cecil L. Bland, it is the opinion of this Court that he has suffered a loss and damage by reason and as a result of the acts of defendant, Gilbert P. Bullis aforesaid. Plaintiff has alleged and has established by competent evidence a loss of $525.00.
"For the reasons aforesaid, it is ordered, adjudged and decreed that there be judgment herein in favor of Cecil L. Bland and against defendant, Gilbert P. Bullis, in the sum of $525.00, with legal interest thereon from judicial demand until paid.
"It is further ordered, adjudged and decreed that plaintiff's demands for specific performance herein be and the same are denied.
"Defendant to pay all costs of this suit.
"Judgment rendered and read in open Court at Vidalia, Louisiana, February 2, 1943 and signed in Open Court at Vidalia, Louisiana, this the 6th day of February, 1943."
We fail to find error in the opinion and judgment of the lower court. The only purpose of the second deed was to clarify the first one by setting out the true facts. Bullis at no time claimed the true consideration agreed upon was not $475. The mineral reservation in the first deed of one-fourth the minerals under S 1/2 of SE 1/4 was not a reservation in C.G. Bullis, but only to protect him under his warranty deed when he sold the minerals, and it is most evident that Bullis did not consider the change in the wording of the reservation a change in the substance of the deed, for the reason the second deed he executed and sent to Bland contained the exact wording as to the reservation as was placed in there by Sklar's attorney when the deed was sent to Bullis.
It is clear to our minds that Mr. Bullis saw a chance to get some extra money out of the sale of a lease on the property after he had executed a deed to the land to Bland, and when the deed was returned to him to be corrected to conform to the agreed trade, he took advantage of the fact that the deed had not been recorded and sold the lease. Under all the rules of law and equity, he is due to have to pay for the loss occasioned Bland by his acts.
The judgment of the lower court is affirmed, with costs. *Page 577